IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFEWATCH SERVICES, INC., <br><br> Plaintiff <br><br> v. <br><br> BRAEMAR, INC, AND ECARDIO DIAGNOSTICS, LLC, <br><br> Defendants. | Case No.: 09CV6001 <br> Hon. William J. Hibbler, U.S.D.J. <br> Hon. Arlander Keys, U.S.M.J. |

**DEFENDANTS' OPPOSITION TO LIFEWATCH'S MOTIONS TO DISQUALIFY ROBERT SCHWARZBERG FROM SERVING AS AN EXPERT FOR DEFENDANTS, PRECLUDE ROBERT SCHWARZBERG FROM CONSULTING WITH DEFENDANTS, AND STRIKE THE SCHWARZBERG DECLARATION**

Defendants Braemar, Inc., and eCardio Diagnostics, LLC respectfully submit this Opposition to the Motions of LifeWatch Services, Inc. ("LifeWatch") regarding the role of Dr. Robert Schwarzberg (the inventor of the '143 Patent) in this litigation.

LifeWatch seeks extraordinary relief – a gag order, striking of evidence, and disqualification of a competent witness – but its basis is pure conjecture. LifeWatch's concerns (and its concomitant maligning opposing counsel) are wholly unfounded. None of its requested relief should be granted. With respect to the attempt to strike the Declaration of Dr. Schwarzberg (the "Declaration") which contains his expert opinions, the Federal Circuit has recognized that an inventor's testimony is admissible where, as here, he is an expert in the subject matter at issue. Moreover, although LifeWatch raises the specter of a purported confidentiality breach, there has been none. The Declaration contains no confidential information – and LifeWatch does not contend otherwise. Nor do the assignment and confidentiality agreements signed by Dr. Schwarzberg provide any basis for striking

Dr. Schwarzberg's declaration. In sum, LifeWatch should not be permitted to deny this Court access to the truthful, relevant and nonconfidential testimony of Dr. Schwarzberg.

LifeWatch's motion to disqualify Dr. Schwarzberg from acting as an expert and preclude consultation with him, should also be denied. The same reasons that require denial of the first motion apply to this motion. LifeWatch has offered no basis for precluding Defendants from speaking with Dr. Schwarzberg, and there is none. Defendants' counsel are well aware of their ethical obligations and have been scrupulously careful in dealing with Dr. Schwarzberg. In addition, the confidentiality agreement with Dr. Schwarzberg on which LifeWatch relies specifically excludes information that predates the contractual relationship between Dr. Schwarzberg and LifeWatch. As a result, Braemar can easily communicate with Dr. Schwarzberg on the conception and interpretation of the '143 Patent without learning protected confidential information.

Defendants respectfully submit that both motions should be denied in all respects.

## FACTUAL BACKGROUND

Dr. Robert Schwarzberg is the named inventor of the '143 Patent. The Patent application was filed and the Patent was issued prior to Dr. Schwarzberg's employment with LifeWatch. Schwarzberg Decl. ¶ 3. Dr. Schwarzberg's employment with LifeWatch ended in 2008 and he has had no relationship with LifeWatch since that time. *Id.*

Dr. Schwarzberg became aware of this case when he was contacted by counsel representing the plaintiff LifeWatch. *Id.*, ¶ 4. As a result of that contact, Dr. Schwarzberg contacted a friend who formerly worked at LifeWatch but who is now employed by eCardio. *Id.*

Counsel for Defendants subsequently sent an email to Dr. Schwarzberg, in which he disclosed that he was representing eCardio and Braemar in a patent infringement case brought by

LifeWatch. *See* Declaration of John L. Krenn ("Krenn Decl."), Ex. A. Counsel stated his understanding that Dr. Schwarzberg was no longer an officer or employee of LifeWatch, that Dr. Schwarzberg had no continuing relationship with the company, and that Dr. Schwarzberg was not represented by counsel. *Id*. Counsel asked Dr. Schwarzberg to correct that understanding if it was incorrect. Counsel for Defendants also told Dr. Schwarzberg that he did not want Dr. Schwarzberg to disclose any privileged or confidential information that he had obtained while an officer or employee of LifeWatch. Dr. Schwarzberg confirmed that he was no longer an officer or employee of LifeWatch, had no continuing relationship with the company, and was not represented by counsel. *Id*. Dr. Schwarzberg also confirmed his understanding that he was not to disclose to Defendants' counsel any confidential or privileged information. Krenn Decl. ¶ 4.

Defendants thereafter retained Dr. Schwarzberg as an expert witness. As part of that retention, Dr. Schwarzberg prepared a Declaration that was submitted in connection with Defendants' motion for summary judgment. Krenn Decl.,. Ex. B. The Declaration was filed in response to a declaration filed by LifeWatch from a purported computer expert opining as to his computer-based understanding of the "ordinary and customary meaning" of the long-term storage means for the cardiac monitoring device claimed by the patent.

Shortly after Defendants filed their responsive pleadings in support of summary judgment, including Dr. Schwarzberg's Declaration, counsel for LifeWatch wrote to object to Dr. Schwarzberg's participation as an expert witness in the case. LifeWatch Motion, Exs. H and I. LifeWatch did not, in that letter or at any time since sending it, identify any confidential information that was improperly disclosed to Defendants. LifeWatch has not at any time identified any confidential information that it contends was disclosed by the Schwarzberg

Declaration. Nor has LifeWatch identified any privileged information that it believes Dr. Schwarzberg may have disclosed to Defendants. There has been no improper disclosure of either confidential or privileged information.

Defendants responded to the letter from LifeWatch's counsel the very next day. Krenn Decl. Ex. C. In that correspondence, Defendants' counsel advised that he had been careful to not seek any confidential or privileged information, and further to remind Dr. Schwarzberg that he should not disclose any confidential or privileged information. *Id.* Defendants' counsel also stated that his discussions with Dr. Schwarzberg did not, in fact, elicit any confidential or privileged information. *Id.* Defendants' counsel also voluntarily produced the complete file of communications with Dr. Schwarzberg in time before LifeWatch brought its Motion. Krenn Decl. ¶ 7.

## ARGUMENT

I.  **The Motion to Strike Should be Denied.**

   A.  **The Court May Consider the Testimony of an Inventor as Proper Extrinsic Evidence to Aid in Claim Construction.**

The Federal Circuit has recognized that, where extrinsic evidence is to be considered in claim construction,[1] the testimony of an inventor is relevant extrinsic evidence. As the court observed in *Voice Technologies Group, Ins. v. VMC Systems, Inc.*:

> An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims. The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems.

---

[1] As is well-established, extrinsic evidence is *not* to be considered where the meaning of the disputed claim term can be ascertained from the intrinsic evidence. *Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)(citations omitted); *Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004); *Multiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

164 F.3d 605, 615 (Fed. Cir. 1999); s*ee also Howmedics Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337, 1346 fn. 5 ("The testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art."); *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp. 2d 1161, 1166 (N.D. Cal. 2003) ("Courts may consider expert testimony, the testimony of the inventor and prior art, whether or not it is referenced in the specification or the presumptive writing."); *The Braun Corp. v. Maxon Lift Corp.*, 282 F.Supp. 2d 931, 934 (N.D. Ind. 2003) ("[A]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and governed by the claims.")

For the reasons set out in Braemar's summary judgment motion, the Court need not consider extrinsic evidence – *e.g.*, any party's declaration – in order to find that the ER920W does not infringe the '143 Patent. However, to the extent that the Court considers extrinsic evidence, Braemar has offered Dr. Schwarzberg's declaration as the testimony of a person skilled in the art regarding the meaning of a key claim term. Dr. Schwarzberg also explains the problem his invention was intended to solve and how the purpose of the invention bears on the claim terms. Such testimony by an inventor is plainly admissible extrinsic evidence if this Court considers any such evidence.

   **B. The Declaration Contains No Confidential Information**

LifeWatch contends that the Schwarzberg Declaration should be stricken because LifeWatch is concerned that Dr. Schwarzberg has disclosed confidential information. But conspicuously absent from LifeWatch's motion is the identification of *any* confidential information included in the Declaration. This is for good reason, of course – there is none. Indeed, the Declaration is directed at the meaning of terms in a patent claim, which is, by definition, public. LifeWatch's argument that there is something "secret" about the meaning of

the terms used in the '143 Patent's claims is plainly inconsistent with the requirement of patent law that the patentee make a full public disclosure of the patented invention as a condition of obtaining the rights conferred by the patent. *See Kewanee v. Bicron,* 416 U.S. 470, 481 (1974); *see also Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("By the patent laws Congress has given to the inventor opportunity to secure the material rewards for his invention for a limited time on condition that he makes full disclosure for the benefit of the public of the manner of making and using the invention, and upon the expiration of the patent the public be left free to use the invention.")

Similarly, LifeWatch identifies no confidential information that Dr. Schwarzberg improperly disclosed to Defendants' counsel. This is particularly telling, in that LifeWatch had in hand the complete file of communications between Defendants' counsel and Dr. Schwarzberg prior to bringing its motion. *See* Krenn Decl. ¶ 7. Defendants' counsel have been transparent to LifeWatch about their communications with Dr. Schwarzberg. Further, Defendants' counsel are certainly mindful of their ethical obligations and were painstakingly careful not to elicit any disclosure of confidential or privileged information. *See* Krenn Decl., Ex. A. LifeWatch merely assumes that there has been an improper disclosure (in the process, baselessly maligning Defendants' counsel as inducing a breach of the confidentiality agreement), but offers no basis for such assumption, and there is none.

Nor does LifeWatch identify any statement of Dr. Schwarzberg in the Declaration that would not be admissible if made in a deposition. LifeWatch admits that Dr. Schwarzberg "can and should be able to testify" in this case as a fact witness, at trial or by way of deposition. LifeWatch Motion at 10. If the same evidence that LifeWatch asks the Court to strike could be

admitted if offered by way of deposition, then LifeWatch's motion serves no purpose other than preventing the Court from considering relevant evidence.

### C. Dr. Schwarzberg's Agreement Does Not Prohibit Him From Testifying Truthfully Regarding the Meaning of Disputed Claim Terms.

The assignment upon which LifeWatch relies requires that Dr. Schwarzberg to "generally do everything possible which said Assignee . . . shall consider desirable for aiding in securing, maintaining and enforcing *proper patent protection* for said inventions." *See* LifeWatch Motion, Ex. A (emphasis added). Although LifeWatch asserts that Dr. Schwarzberg's testimony constitutes a breach of the assignment, LifeWatch does not explain how providing that testimony is inconsistent with "proper" for the '143 Patent. There is simply nothing improper about Dr. Schwarzberg providing evidence regarding the background of his invention and the meaning of certain disputed claim terms as understood by a person of ordinary skill in the art.

Nor is it appropriate for LifeWatch to rely on this contract provision to prevent the Court from considering relevant evidence. Contracts that have the effect of suppressing evidence have been given a narrow reading. *See, e.g. Blake v. Continental Casualty Co.*, 278 Ill. App. 232, 236, 1934 Ill. App. LEXIS 34 (Ill. Ct. App. 1934) (contract requiring suppression of testimony would be invalid as against public policy); *Williamson v. Superior Court of Los Angeles*, 148 Cal. Rptr. 39, 21 Cal.3d 829, 582 P.2d 126 (Cal. 1978) ("Agreements to suppress evidence have long been held as void as against public policy, both in California and in most common law jurisdictions."). In entering into the assignment, Dr. Schwarzberg agreed to assist the patent owner in enforcing "*proper* patent protection." He did not, however, agree to be subject to a general gag order that would preclude him from providing nonconfidential, truthful evidence regarding the proper construction of the claims.

-7-

Contrary to LifeWatch's assertion, the Declaration is not barred by the doctrine of assignor estoppel. The doctrine generally prevents a party assigning rights to a patent from challenging the validity of the patent. *See Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988). Assignor estoppel is not, however, a witness disqualification doctrine. *See, e.g., Briggs & Riley Travelware, LLC v. Paragon Luggage, Inc.*, 324 F.Supp.2d 395, 400 (S.D.N.Y. 2003) (accepting inventor's testimony as retained expert of an accused infringer). Nor does it apply to anyone other than the assignor. And although assignor estoppel limits a challenge by an assignor to the patent's validity, it does not prevent the assignor from advocating a narrower claim construction. *See Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*, 150 F.3d 1374, 1378 (Fed. Cir. 1998). Dr. Schwarzberg's Declaration goes to the issue of claim construction, not patent validity. Defendants will not be using Dr. Schwarzberg as an expert on the patent's invalidity, in any event. The doctrine of assignor estoppel is simply inapplicable.

**D.    The Confidentiality Agreement Does Not Prohibit Dr. Schwarzberg's Truthful Testimony.**

LifeWatch's reliance on the confidentiality agreement entered into between Dr. Schwarzberg and LifeWatch is also misplaced. The application that resulted in the '143 Patent was filed on May 3, 1996, and the '143 Patent issued on March 24, 1998. Dr. Schwarzberg did not become a LifeWatch employee until 1999, after the Patent was issued. LifeWatch Memo at 3. The confidentiality agreement prohibits disclosure of "Confidential Information" that Dr. Schwarzberg acquired during his relationship with LifeWatch, not information that he possessed prior to joining LifeWatch. LifeWatch Motion, Ex. B, ¶¶ 1, 2H. Indeed, the confidentiality agreement excludes from the definition of "Confidential Information" any information in Dr. Schwarzberg's possession before he became employed by LifeWatch,

"except to the extent that such information as [sic] or has become a trade secret of the Company or is or otherwise has become the property of the Company." LifeWatch Motion, Ex. B, ¶2H. LifeWatch does not contend that Dr. Schwarzberg's Declaration discloses any trade secret or information constituting property of LifeWatch.

In support of its motion, LifeWatch also refers to "a possibility" that Defendants' counsel violated the attorney-client privilege and obtained privileged information from Dr. Schwarzberg. LifeWatch Motion at 10. Despite the lack of any support for such a claim, Lifewatch nevertheless asserts it in an apparent attempt to tar Defendants' counsel with an alleged violation of the rules of ethics. Defendants' counsel were careful not to elicit privileged information from Dr. Schwarzberg; Dr. Schwarzberg indicated that he understood and agreed with this bar; there has been no disclosure of privileged information; and LifeWatch does not – and cannot – demonstrate otherwise. LifeWatch's "suggestion" of a violation of the attorney-client privilege should be dismissed out of hand.

**II.     The Motion to Disqualify Dr. Schwarzberg from Serving as an Expert Witness and to Preclude all Communications with Him Should Also Be Denied.**

Disqualification of a witness is a drastic measure, and one that is granted only "hesitantly, reluctantly, and rarely," as LifeWatch's own authority recognizes. *See, e.g. Broadcom Corp. v. Emulex Corp.,* No. 09-01058 (C.D. Cal. Apr. 5, 2010), at 2 (LifeWatch Motion, Ex. D). The burden of proving the need for disqualification is on the party seeking it. *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.,* No. 2:04-CV-167, 2006 WL 5111116 (E.D. Tex. Feb. 9, 2006) at *2 (LifeWatch Motion, Ex. E). LifeWatch argues that, in determining whether to disqualify Defendants' expert, the Court must consider: 1) whether LifeWatch had a confidential relationship with Dr. Schwarzberg; and 2) whether LifeWatch disclosed confidential information

to Dr. Schwarzberg that is relevant to the current lawsuit. LifeWatch Motion at 5. LifeWatch has failed, however, to carry its burden with respect to either element of this test.

LifeWatch argues that Dr. Schwarzberg's contractual obligations and his role in the preparation and prosecution of the '143 Patent require Dr. Schwarzberg's disqualification. LifeWatch Motion at 2. However, the '143 Patent application was filed and the Patent was issued before Dr. Schwarzberg even began his employment with LifeWatch. LifeWatch's contract expressly limited Dr. Schwarzberg's confidentiality obligations to information that he obtained while an employee of LifeWatch. LifeWatch Motion, Ex. B, ¶¶ 1, 2H. Any information obtained by Dr. Schwarzberg in connection with the prosecution of the Patent application pre-dated his employment by LifeWatch and, accordingly, falls outside the scope of the parties' agreement regarding confidentiality. Moreover, the confidentiality agreement identifies the contracting parties as Dr. Schwarzberg, and LifeWatch Holding Corporation, and its subsidiaries, affiliates, successors and assigns. LifeWatch Motion, Ex. B, introductory paragraph. Predecessors are only referred to in the agreement as an exception to the definition of what constitutes "confidential information" subject to the agreement. LifeWatch Motion, Ex. B, ¶ 2H.

The cases cited by LifeWatch also fail to support its position. Three of the four cases on which LifeWatch relies – *i.e., 3D Systems*, *Inc. v. Envisiontec, Inc*., No. 05-74891, 2008 WL 4449595 (E.D. Mich. Oct. 1, 2008); *Sensormatic*, and *Eastman Kodak Co. v. Agfa-Gevaert N.V.,* No. 02-CV-6564, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003) – are inapposite because they involved a witness who obtained confidential information from the patent owner during the witness's employment with the party seeking disqualification. Here, Dr. Schwarzberg did not and could not have obtained the information at issue during his employment with LifeWatch,

since the Patent was issued prior to such employment. LifeWatch Motion at 3; Affidavit of John Krenn (July 1, 2010), Ex. 1 (the '143 Patent). The other case relied on by LifeWatch, *Broadcom*, concerned confidential information obtained by an employee while working for a predecessor of the party seeking disqualification. The conclusion in the *Broadcom* case, however, has no relevance here because the LifeWatch confidentiality agreement expressly limits the protected information to confidential information gained during the employment relationship. LifeWatch Motion, Ex. B, ¶¶ 1, 2H.

LifeWatch also argues that Dr. Schwarzberg should be disqualified because he "possesses unique information pertaining to attorney-client communications that occurred during the prosecution of the '143 Patent." LifeWatch Motion at 7. LifeWatch nowhere identifies the allegedly privileged information that it believes Dr. Schwarzberg possesses, nor does it describe any communications with attorneys that are pertinent to the meaning of the disputed claim terms. Long on rhetoric and assumptions – but bereft of proof, LifeWatch's conclusory assertions are wholly insufficient to support the extraordinary relief of disqualifying a witness from testifying.

Furthermore, the attorney-client privilege, if any, is not for LifeWatch to assert. The attorney-client privilege relating to the prosecution of the Patent would belong to Dr. Schwarzberg or his then-employer, Cardio Life, but not to LifeWatch. A transfer of assets from one corporation to another does not result in a transfer of the attorney-client privilege, nor does the assignment of a patent transfer the privilege. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir. 1988) (assignment of a patent does not transfer an attorney-client relationship); *Yosemite Investment, Inc., v. Floyd Bell, Inc*., 943 F.Supp. 882, 883 (stating general rule that the right to assert the attorney-client privilege does not change hands with the bare assignment of assets); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 2003 U.S.

Dist. LEXIS 13816, *5 (N.D. Ill. 2003) (mere transfer of assets from one corporation to another does not transfer the attorney-client privilege). LifeWatch bases its claim of privilege solely on Dr. Schwarzberg's assignment of rights under the '143 Patent. See LifeWatch Motion at 3. Such an assignment does not, as a matter of law, give rise to standing on the part of LifeWatch to claim the privilege. LifeWatch has shown no other basis to obtain rights to the privilege possessed by Cardio Life, and there is no other ground for the relief it seeks.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny LifeWatch's motions to strike the Declaration of Dr. Robert Schwarzberg, to preclude Defendants' counsel from speaking with Dr. Schwarzberg, and to disqualify Dr. Schwarzberg from acting as an expert witness in this case.

Dated September 14, 2010

/s/ John L. Krenn
John L. Krenn (MN ID 012493X)
Gregory R. Merz (MN ID 0185942)
Dean C. Eyler (MN ID 267491)
Gray, Plant, Mooty, Mooty & Bennett, P.A.
500 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3000
Fax: (612) 632-4444
john.krenn@gpmlaw.com
gregory.merz@gpmlaw.com
dean.eyler@gpmlaw.com

-and-

-13-

        Stacie R. Hartman (ID No. 6237265)
        Luke T. Shannon (ID No. 6290734)
        Schiff Hardin LLP
        6600 Sears Tower
        Chicago, Illinois 60606
        Telephone: (312) 258-5500
        Fax: (312) 258-5700
        shartman@schiffhardin.com
        lshannon@schiffhardin.com

        **ATTORNEYS FOR BRAEMAR, INC., AND ECARDIO DIAGNOSTICS, LLC**

GP:2847550 v1