**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LIFEWATCH SERVICES, INC.,

      Plaintiff

v.

BRAEMAR, INC, AND ECARDIO
DIAGNOSTICS, LLC,

      Defendants.

Case No.:  09CV6001
Hon. William J. Hibbler, U.S.D.J.
Hon. Arlander Keys, U.S.M.J.

**DECLARATION OF JOHN L. KRENN**

I, John L. Krenn, do hereby declare:

1.      I am one of the attorneys for Braemar, Inc. and eCardio Diagnostic, LLC in this matter.

2.      This Declaration is being submitted with respect to Defendants' opposition to the Plaintiff's Motions with respect to Dr. Schwarzberg.

3.      When I became aware that Dr. Schwarzberg, the inventor of the '143 Patent, had been contacted by Plaintiff's counsel about this case and had disagreed with Plaintiff's counsel's interpretation of the '143 Patent, I sent an email to Dr. Schwarzberg.  The email I sent to Dr. Schwarzberg is attached hereto as Exhibit A.

4.      In response to the email, Dr. Schwarzberg called me.  In that call, he confirmed he understood that he was not to disclose to me any confidential or privileged information of Plaintiff.

5.      Defendants thereafter retained Dr. Schwarzberg as an expert witness.  As part of that retention, Dr. Schwarzberg prepared a declaration that was submitted in connection with

-2-

Defendants' motion for summary judgment (the "Schwarzberg Declaration"). The Schwarzberg Declaration is attached hereto as Exhibit B.

6. Plaintiff's counsel wrote to me on August 11, 2010 and objected to Dr. Schwarzberg's involvement. I wrote back on August 12, 2010 to explain why Dr. Schwarzberg's involvement was totally appropriate. *See* letter to Jeremy Oczek attached as Exhibit C.

7. After sending the letter, Mr. Oczek asked me for the complete file of all communications between Defendants' counsel and Dr. Schwarzberg and I produced that file in time to allow Plaintiff's counsel to review it before bringing the motions now at issue.

I declare under penalty of perjury under the laws of the United States of America that the preceding is true and correct.

Executed this 14th day of September, 2010 at Minneapolis, Minnesota.

/s/ John L. Krenn
John L. Krenn

GP:2847398 v1

# EXHIBIT A

## Krenn, John L.

**From:** Krenn, John L.
**Sent:** Thursday, August 05, 2010 3:11 PM
**To:** 'rschwarzberg@sensei.com'
**Subject:** LifeWatch

I am a lawyer representing eCardio Diagnostics, LLC and Braemar, Inc. in a patent infringement lawsuit brought against those two companies by LifeWatch Services, Inc.

I understand that you are the former Chief Medical Officer of Lifewatch and the inventor named in the '143 Patent ("Electrocardiographic Monitoring and Recording Device"). It is my understanding that you no longer are an officer or employee of the '143 patent owners and that you no longer have a continuing relationship with them. I also understand that you are not represented by counsel connected with LifeWatch. Please let me know if I am incorrect in any of these understandings.

I would like to talk to you about the patent and how you would describe what you invented. I understand you contacted eCardio recently and indicated that you would like to talk to counsel for eCardio on that issue. If you are willing to talk to me, I want to be sure that in our discussion you do not disclose to me any attorney-client privileged or confidential information from the time period when you were an officer/employee of LifeWatch.

I look forward to talking to you. You can call me at 612-632-3222.

8/16/2010

BO06387

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFEWATCH SERVICES, INC., and CARD GUARD SCIENTIFIC SURVIVAL, LTD. <br><br> *Plaintiffs,* <br><br> v. <br><br> BRAEMAR, INC., and ECARDIO DIAGNOSTICS, LLC <br><br> *Defendants.* | Civil Action No. 09-CV-6001 <br><br> **DECLARATION OF ROBERT SCHWARZBERG** <br><br><br> Honorable William J. Hibbler <br> Magistrate Judge Arlander Keys |

I, Robert Schwarzberg, do hereby declare:

1.    I am the named inventor of Patent Number 5,730,143 (Electrocardiographic Monitoring and Recording Device) (the "'143 Patent"). I formerly was the Chief Medical Officer of LifeWatch Services, Inc. ("LifeWatch"). I have been retained as an expert witness by the Defendants, Braemar, Inc. ("Braemar") and eCardio Diagnostics, LLC ("eCardio") in this matter.

2.    I have been involved in cardiac monitoring and recording devices since 1988. Since 1986, I have been a board-certified cardiologist. My resume is attached as Exhibit A.

3.    In the late 1980s, I was one of the principals in a company called Cardio Life. Cardio Life designed and manufactured looping and non-looping event recorders. While I was at Cardio Life, I developed an autotrigger loop recorder and invented the '143 Patent. I became the Chief Medical Officer of LifeWatch in about 1996 and held that position until the end of 2008. I have no continuing relationship with LifeWatch or its parent Card Guard Scientific Survival

Services, Inc. I now am the CEO of Sensei, Inc., which is involved in mobile applications for health and wellness.

4.    Recently, I was contacted by LifeWatch's litigation counsel about this case. Until that point, I had not known that an infringement claim was pending against defendants. I declined to discuss the case with LifeWatch's litigation counsel. In late July, 2010, I contacted an old friend who now works at eCardio but who previously worked at LifeWatch, and inquired if he knew about the patent being enforced. He mentioned eCardio was a defendant. Counsel for eCardio then contacted me and asked if I would be an expert witness in the case to explain the technology in the '143 Patent.

5.    I understand that a patent is to be interpreted as it would be understood by one of ordinary skill in the art. In this regard, I believe the relevant art is portable, wearable electronic devices for recording and transmitting electrocardiographic data. I believe a person of ordinary skill in the art would be an individual with experience in developing and/or designing cardiac monitors.

6.    I have reviewed the '143 Patent. From my perspective as a person skilled in the art, what the invention of the '143 Patent did was to combine together a cardiac event recorder with a long term memory like that of a Holter monitor which has the capacity to record many hours of continuous electrocardiographic data recorded from the patient's heart rhythms ("ECG data").

7.    As set forth in the specifications, the novelty in the '143 invention was combining together in one device the benefits one would gain from an event recorder, with the benefits one gains from having a record of long periods of continuous ECG data from the patient. In this way, the patient's medical team is alerted to arrhythmias, but also the medical team can see what

2

is happening during the intervals between the arrhythmia occurrences. The advantages of this combination are spelled out in Column 1 of the '143 Patent specifications.

8.      As reflected in Figure 1 of the '143 Patent, the electrical signals from the heart are sent in parallel to two places – an evaluation buffer and long-term storage. The long-term storage receives extended periods of continuous raw ECG data from the patient. It is long term in the sense of being measured by the many hours of ECG data (at least 12) that it records from the patient's heart.

9.      I have read the LifeWatch brief filed in response to the motion of defendants for summary judgment. The assertion in the brief that "long term storage" in the '143 Patent means a medium for storing data for an extended period is not accurate. The "long" in long term storage refers to an amount of data measured by the length of time the data is collected, not how long the data is stored. In this instance, measurement of "long" by the amount of time and the amount of data are synonymous. At the same time, the medium on which the data is collected is a non-volatile memory, meaning it will survive if a loss of power occurs. Persistence of memory alone, however, would not have been a patentable concept, as persistence of memory was already well established in the field at the time of the invention of the '143 Patent. Nor would mere persistence of memory have any clinical significance, as it was the ability to view a continuous stream of ECG data over time that was key to the '143 patent.

10.     In the '143 Patent, the other parallel path to which the electrical signals are transmitted is to the "event recorder" portion of the invention. There, the electric signals containing the ECG data flow through an evaluation buffer to be evaluated by a signal processing means which compares them to stored heart rhythm parameters to determine whether an arrhythmia has occurred. The evaluation buffer has a "loop" memory holding several minutes

3

of ECG data that constantly overwrites itself as the memory fills. If an arrhythmia occurs, the '143 Patent provides that the signal processing means will output an activation signal to cause the evaluation buffer to send the ECG data that is stored in its memory at the time of the activation signal to a holding buffer.

11.     I have been informed that there is a dispute about the meaning of the term "long term storage" in claim 18 of the '143 Patent. Based on the stated purpose of the patent, the problems that it was meant to solve, the repeated references in the specifications to 12 to 24 hours of continuous data storage, Figure 1 and its accompanying discussions, and the language of the claim, it is my opinion that "long term storage" in claim 18 of the '143 Patent refers to the capability of extended memory reflecting longer recordings of continuous ECG data, i.e. storing 12 hours or more of ECG data of the patient. In support of this opinion, I rely not only upon my own experience in this art, but also express provisions of the '143 Patent, including the following:

a.     The statements of purpose in the patent ("an electrocardiographic monitoring and recording device that includes continuous long-term recording ..." Abstract); ("[T]his invention relates to a wearable device for the selective and continuous recording of electrocardiographic data." Column 1, lines 6-8).

b.     Statements in the patent with respect to the problems solved by the invention. (See generally the description of "background of the invention" in columns 1 and 2, and specifically the conclusion: "The present invention is directed to overcoming the shortcomings of both Holter type and event type cardiac monitors." Column 2, lines 7-9).

c.     The statements in the patent describing the invention: ("Simultaneously with the selective recording, continuous extending recording occurs, allowing for 24 hours or

4

more of ECG data to be captured for evaluation or all or any portion." Column 1, lines 13-16); ("The present invention is directed to an electrocardiographic monitoring or recording device that includes the continuous long-term recording of a Holter device and the selective recording of event type records." Column 2, lines 13-16); ("The monitor device of the present invention also includes a separate long-term memory for storing more data, hours before and/or after the trigger event, e.g., 12-24 hours or more of additional data, which can also be downloaded." Column 2, lines 31-34).

       d.    The language of the claim 18 which describes a long-term storage means and expressly indicates that the signals stored are to be representative of the "heart rhythms of the patient . . ." Column 6, lines 57-58.

       e.    Figure 1, which is the only figure attached to the patent and which specifically states that it is "constructed in accordance with the present invention." Column 2, lines 45-47. Figure 1 includes the "long term" storage in the Box labeled "22" and the specifications describe Box 22 as "the 12-24 hour long term memory 22 . . ." Column 4, lines 46-47.

     I declare under penalty of perjury under the laws of the United States of America that the preceding is true and correct.

Robert Schwarzberg

OP:2830573 v1

# EXHIBIT A

## Robert J. Schwarzberg, M.D., F.A.C.C.

Email: rjs63@columbia.edu

| | |
|---|---|
| 2300 Glades Road, Suite 201E | Office: 561.392.1400 |
| Boca Raton, Florida 33431 | Mobile: 561.702.4036 |

## Professional Experience

**Sensei, Inc.** Boca Raton, Florida                    September, 2005 - Present
President and Chief Executive Officer

- Created concept and business plan
- Responsible for strategic planning, content and P/L management.
- Instrumental in identifying and forging partnership with Humana
- Sensei is developing health and wellness applications for Mobile Phones

**Cardguard AG** Zurich, Switzerland                    November, 2004 - 2008
Chief Medical Officer (Boca Raton, FL)

-Product development and applications
-Strategic planning
-Strategic relationships

**LifeWatch, Inc.** Buffalo Grove, Illinois                    May, 1999 - 2008
Medical Director (Boca Raton, FL)

-Strategic development
-Chairman of Medical Advisory Board
-Supervision and quality assurance for all clinical departments
-Consult with physician customers.

**Ralin Medical, Inc.** Buffalo Grove, Illinois          October, 1996 - December, 1999
Chief Medical Officer (Boca Raton, FL)

Ralin Medical was the parent company for Cardiac Solutions (now CorSolutions),
national leader in disease state management and LifeWatch, the industry leader in
cardiac arrhythmia monitoring.

-Disease State Management Programs- Collaborated on completing, updating and
enhancing details of CHF, Diabetes, and CVD programs.
-Collaborated in development and introduction of COPD program.
-Designed and implemented program to enhance physician compliance with
guidelines demonstrated 200% improvement.
-Developed the financial model based on clinical impact for CVD program
culminating in several contracts including 2 of the nations largest mco's.

-Identified and recruited group of experts for completion of COPD program.(at 15% of cost of our other disease management programs.)
-Identified and recruited array of experts for national advisory board.
-U.S. Patent awarded for new cardiac arrhythmia monitor. Negotiations are underway with device manufacturers for this device

**Primus Health Plan** Miami, Florida 1995 - 1996
General Partner, Board of Directors

Start up company attempting to develop physician owned managed care company.

**CardioLife Corporation** Boca Raton, Florida 1989 - 1996
Chairman and Medical Director

-Supervision and Quality Assurance for all clinical departments.
-Consultant to physician customers.
-Development of clinical guidelines
-Director of Medical Advisory Board
-Manage product development.
-Defined new monitor specifications, successfully negotiated with device manufacturer for production at lowest market price in industry. Initial units delivered within 120 days of signed contract and restricted sales to third parties.

**Robert J. Schwarzberg, M.D., P.A.** Boca Raton, Florida 1988 - Present
Cardiologist

Private Practice of Cardiology

**Kaplan, Jaffe and Shine, P.A.** Miami Beach, Florida 1986 - 1988
Cardiologist

Private Practice of Cardiology

## Appointments

| | |
|---|---|
| **American College of Cardiology** | 2003 - Present |
| National Disease Management Working Group | January 2004 - Present |
| | |
| Medical Director Institute | 2003 - Present |

| | |
|---|---|
| Consensus Work Group on Disease Management (Chicago, Ill.) | June 2003 |
| **American College of Cardiology, Florida Chapter**<br>Third Party Reimbursement Group | 2003 - Present |
| **Microsoft**<br>Consultant Health Care Strategy Group | 2006 |
| **Humana Inc.** Louisville, KY<br>National Medical Consultant Group | January 2000 – 2001 |
| **Boca Raton Community Hospital** Boca Raton, Florida<br>Hospital Quality Council, Chairman | 2000 - 2001<br>January 2000 - 2001 |
| Heart Failure Taskforce, Chairman | January 2000 - 2001 |
| **Cardguard Scientific Survival** Rehovot, Israel<br>Medical Advisory Board | September, 1999 - Present |
| **Florida Atlantic University** Boca Raton, Florida<br>Clinical Associate Professor of Biomedical Science | September 1999 - Present |
| **American Heart Association** Boca Raton, Florida<br>Board of Directors | September 1998 - Present |

## Education

| | |
|---|---|
| **Long Island Jewish Medical Center** New Hyde Park, New York<br>Fellow in Clinical Cardiology | 1984 - 1986 |
| **Columbia Presbyterian Hospital** New York, New York<br>Fellow in Nuclear Cardiology | 1984 |
| **The Mount Sinai Hospital** New York, New York<br>Junior Assistant Resident in Internal Medicine | 1982 - 1983<br>1982 |
| Senior Assistant Resident in Internal Medicine | 1983 |
| **George Washington University Hospital** Washington, D.C.<br>Intern in Internal Medicine | 1981 |
| **Wayne State University School of Medicine** Detroit, Michigan<br>Graduated as Doctor of Medicine | 1980 |
| **Columbia College, Columbia University** New York, New York | 1974 |

Graduated with Bachelor of Arts

## Membership

American College of Cardiology
American Heart Assocation
Disease Management Association
Mobile Marketing Association
Society of Behavioral Medicine
Behavior Informatics Group

## License

Florida Medical License, 1986: #48642
Diplomat, American Board of Internal Medicine in the Subspecialty of Cardiovascular
    Disease, 1985
License in Nuclear Cardiology, 1984
Diplomat, American Board of Internal Medicine, 1983
New York State Medical License, 1981: #146543

# EXHIBIT C



500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

JOHN L. KRENN
ATTORNEY
DIRECT DIAL: 612.632.3222
DIRECT FAX: 612.632.4222
JOHN.KRENN@GPMLAW.COM

August 12, 2010

Jeremy P. Oczek                                                    *Via Email and U.S. Mail*
Proskauer Rose LLP
One International Place
Boston, MA 02110-2600

RE:     *Lifewatch Service, et al. v. Braemar, Inc., et al.*
         Case No: 09-CV-6001

Dear Jeremy:

        We received your letter dated August 11, 2010 claiming that it was improper for Defendants to retain Dr. Schwarzberg or to obtain and file his declaration. We see no basis for your arguments as explained further below. At the outset, however, be assured that we were careful in our discussions with Dr. Schwarzberg not to seek or discuss with him any confidential or attorney-client privileged information.

        You note that Defendants had not previously notified LifeWatch of their intention to hire Dr. Schwarzberg as an expert. As you know, expert disclosures are not due yet, and presumably that is why LifeWatch did not provide any prior notice regarding the expert it used as part of its recent summary judgment opposition. Further, we just recently first spoke to Dr. Schwarzberg. See Declaration of Robert Schwarzberg, ¶ 4 (attached to this letter).

        The Assignment does not prevent Dr. Schwarzberg's involvement in the case. Any obligation from that 1997 agreement to aid in enforcing "proper" patent protection does not require him to support enforcement of a gross mischaracterization of the patent's stated intent and meaning. It certainly does not bar Dr. Schwarzberg from testifying truthfully about his understanding of the meaning of the terms. In sum, nothing you cite forces Dr. Schwarzberg to remain silent as the patent is being misconstrued.

        You suggest that it is "difficult to imagine" how Defendants could hire Dr. Schwarzberg as an expert without improperly eliciting information from him that would constitute violations of confidentiality or the attorney-client privilege. Your suggestion that we acted improperly is made without any basis, and there is no basis for the accusation. In fact, we were careful to remind Dr. Schwarzberg at the outset of our discussion with him that he should not disclose any confidentiality obligations or the attorney-client privilege. And our discussions with him did not elicit any confidential or attorney-client privileged material.

        There is no basis to exclude the declaration. The declaration does not disclose any confidential or privileged information, and you have not suggested otherwise. Your letter concedes, as it must, that Defendants could have deposed Dr. Schwarzberg. Following such a

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
A FULL-SERVICE LAW FIRM
MINNEAPOLIS, MN • ST. CLOUD, MN • WASHINGTON, DC
WWW.GPMLAW.COM

Jeremy P. Oczek
August 12, 2010
Page 2

deposition, Defendants could have submitted his testimony regarding the understanding of a person of ordinary skill in the art about the meaning of the claim terms. LifeWatch thus was not prejudiced by Defendants obtaining and submitting evidence, in the form of Dr. Schwarzberg's declaration, since, as you concede, it could have been obtained through a deposition.

Your letter is perhaps most telling in its lack of any legal support for your aggressive demands and apparent effort to silence Dr. Schwarzberg. We are not aware of any reason (and your letter does not provide any) that we cannot speak with Dr. Schwarzberg.

Your letter is consistent only with LifeWatch's continued attempt to create infringement under the '143 Patent where none exists. Braemar has told LifeWatch repeatedly from the start of this case that the ER920W is solely an event recorder, so it cannot infringe the '143 patent. The whole basis of the '143 Patent was to create something new by combining together the benefits of an event recorder with the benefits of Holter monitoring--continuous recording of ECG for extended periods of time. LifeWatch is relying on an argument for infringement that is contrary to the language and express purpose of that patent. Now, LifeWatch is seeking to bar the common sense comments of the named inventor, a person who clearly is of ordinary skill in the art. Braemar has notified LifeWatch more than once that the claims brought by LifeWatch are completely without merit, and your actions here simply underscore that this case is being brought to bully a smaller competitor. We hope that you will reconsider pursuing these baseless claims against Braemar and cease causing the parties to waste resources unnecessarily. If you do not do so, we will make sure the Court understands the exceptional circumstances that warrant LifeWatch's reimbursing our clients for the fees and costs expended in this litigation.

Sincerely,

John L. Krenn

JLK:DCE:ww

cc:     Stacie Hartman, Esq. (via email)

GP:2832828 v1