# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LIFEWATCH SERVICES INC.

    *Plaintiff*,

v.

BRAEMAR, INC. and
ECARDIO DIAGNOSTICS, LLC,

    *Defendants*.

Civil Action No. 09-CV-6001

## LIFEWATCH'S REPLY
## IN SUPPORT OF ITS MOTION TO DISQUALIFY
## ROBERT SCHWARZBERG FROM SERVING AS AN EXPERT
## FOR DEFENDANTS, PRECLUDE SCHWARZBERG FROM CONSULTING
## WITH DEFENDANTS, AND STRIKE THE SCHWARZBERG DECLARATION

Defendants do not dispute – nor can they – that courts routinely disqualify inventors, like Dr. Schwarzberg, who "switch teams" and attempt to work as an "expert" for an adverse party. The relief sought here by LifeWatch is not "extraordinary" as Defendants contend. Opp. at 1. As recently stated by one court: "**Courts *routinely* disqualify consultants who were named inventors or involved in the development of patents being asserted by the adverse party**." *Broadcom Corp. v. Emulex Corp.*, No. 09-01058, slip op. at 3-4 (C.D. Cal. April 5, 2010) (emphasis added). The same routine result should follow here with respect to Dr. Schwarzberg.

Tellingly, Defendants' opposition does not point to a *single* case in which a named inventor hired by an alleged infringer survived a disqualification challenge. Instead, Defendants' opposition argues so many irrelevant issues as it twists the facts and law, and resorts to the *same* rejected arguments advanced by defendants in the key cases[1] cited in LifeWatch's motion.

Defendants all but ignore the key cases cited by LifeWatch – *Broadcom*, *3D Systems*, *Sensormatic*, and *Eastman Kodak* – indeed, Defendants only address these cases in a *single* paragraph on pages 10-11 of their opposition. Yet, these key, instructive cases demonstrate that Dr. Schwarzberg must be disqualified from serving as an expert for Defendants because 1) he had a confidential relationship with LifeWatch and its predecessors and 2) he received confidential information from LifeWatch and its predecessors related to the patented technology.

In an effort to gloss over the two-prong disqualification inquiry, Defendants engage in misdirection by arguing that "the testimony of an inventor is relevant extrinsic evidence," Opp.

---

[1] *See Broadcom Corp. v. Emulex Corp.*, No. 09-01058, slip. op. (C.D. Cal. Apr. 5, 2010) (disqualifying inventor from serving as an expert for defendant); *3D Sys., Inc. v. Envisiontec, Inc.*, No. 05-74891, 2008 WL 4449595 (E.D. Mich. Oct. 1, 2008) (disqualifying inventor from serving as an expert for defendant); *Sensormatic Elecs. Corp. v. WG Sec. Prods., Inc.*, No. 2:04-Cv-167, 2006 WL 5111116 (E.D. Tex. Feb. 9, 2006) (disqualifying inventor from serving as an expert for defendant); *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003) (disqualifying former employee who worked on invention from serving as an expert for alleged infringer).

at 4, and "LifeWatch identifies no confidential information that Dr. Schwarzberg improperly disclosed to Defendants' counsel," Opp. at 6.

As to the first argument, while inventory testimony *may* be relevant on certain issues, Federal Circuit law is crystal clear "that inventor testimony as to the inventor's subjective intent is *irrelevant* to the issue of claim construction." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) (emphasis added). Here, Dr. Schwarzberg's declaration is being proffered by Defendants to show "*his opinion*" as to the construction of the disputed claim term "long term storage," which is *exactly* the type of subjective testimony on claim construction that the Federal Circuit says is irrelevant.

As to the second argument, whether or not an inventor actually discloses confidential information to an adverse party is also irrelevant to the disqualification inquiry – the relevant questions in the two-prong analysis are 1) did the adversary have a confidential relationship with the proffered expert, and 2) did the *adversary disclose* confidential or privileged information *to the proffered expert* that is relevant to the current litigation. The same argument made here by Defendants – that they told Dr. Schwarzberg not to disclose any confidential or privileged information to them – was soundly *rejected* in the *Eastman Kodak* decision:

> To expect [the proffered expert] to somehow suppress that knowledge by not revealing confidential information encompassed by his employment agreement with [the patent holder] when he has been retained by [the defendant] to evaluate the validity of patents pertaining to the specific technology he spent over a decade studying for [the patent holder] is unworkable if not quixotic.

*Eastman Kodak*, 2003 WL 23101783 at *5.

In the end, it is enough that Dr. Schwarzberg worked for numerous years at LifeWatch and its predecessors and agreed to keep confidential what he learned there, as well as being a named inventor on the '143 Patent, to say that he ought not be allowed to offer expert testimony

for Defendants in this case. Defendants should look elsewhere for their expert. *See 3D Sys.*, 2008 WL 4449595 at *3 (disqualifying inventor: "In the end, it is enough that Dr. Jacobs worked for ten (10) years at 3D and agreed to keep confidential what he learned there, as well as being a named inventor on a number of the patents asserted, to say that he ought not be allowed to offer expert testimony in this case. [Defendant] should look elsewhere for its expert.")

## ARGUMENT

**I. DISQUALIFICTION OF DR. SCHWARZBERG IS APPROPRIATE UNDER THE TWO-PRONG DISQUALIFICTION TEST FOR EXPERTS**

    **A. Defendants Focus on Irrelevant Issues and Ignore the Disqualification Test.**

Defendants do not dispute that courts routinely disqualify inventors from testifying as experts for adverse parties. Defendants also do not dispute that the disqualification test for experts is as follows:

> In determining whether to disqualify an expert based on a prior relationship with the adversary, a court must undertake the following two-step inquiry: (1) Did the adversary have a confidential relationship with the expert; (2) Did the adversary disclose confidential or privileged information to the expert that is relevant to the current litigation?

*Eastman Kodak*, 2003 WL 23101783, at *1 (citation omitted).

    **1.** *Prong #1: Dr. Schwarzberg Had a Confidential Relationship with LifeWatch and Its Predecessors.*

LifeWatch satisfied the first prong of the disqualification test, as there is ample evidence that Dr. Schwarzberg had a confidential relationship with LifeWatch and its predecessors. Dr. Schwarzberg signed formal confidentiality agreements with LifeWatch (one of which references "Ralin Confidential Information"), was employed by LifeWatch and its predecessors (Ralin and CardioLife), is the sole inventor of the '143 Patent, and was involved with the prosecution of the '143 Patent (including as a participant in privileged conversations). Any of these facts

-3-

individually is sufficient to show a confidential relationship between Dr. Schwarzberg and LifeWatch and its predecessors; taken together, they constitute clear evidence of that relationship.

As an initial matter, it is well-recognized that "involvement in a patentable invention gives a person access to confidential information relevant to subsequent litigation, regardless of when the litigation takes place." *Broadcom*, No. 09-01058, slip op. at 4. In addition, courts have expressly recognized the existence of a confidential relationship may be shown by the existence of a formal confidentiality agreement. *See Sensormatic,* 2006 WL 5111116, at *3; *Broadcom*, No. 09-01058, slip. op. at 2. Dr. Schwarzberg signed several such agreements with LifeWatch. In the Confidentiality Agreement dated October 20, 2003, Dr. Schwarzberg "acknowledge[d] and agree[d] that solely by virtue of [his] employment with the Company, [he would] have access to **'Confidential Information'… .**" Docket No. 88-2 at ¶ 1. He further agreed not to disclose that information to any third parties, absent consent or approval from LifeWatch. *Id.* This is sufficient to create a confidential relationship between Dr. Schwarzberg and LifeWatch. *See Eastman Kodak*, 2003 WL 23101783, at *1.

Defendants attempt to "distinguish" three of the four key cases cited by LifeWatch by arguing – at the end of their opposition brief – that the cases are "inapposite because they involved a witness who obtained confidential information from the patent owner during the witness's employment with the party seeking disqualification." Opp. at 10. Defendants' argument has no merit. Dr. Schwarzberg's CV states that he worked at CardioLife from 1989 to 1996, at Ralin from 1996 to 1999, and at LifeWatch from 1999 to 2008. *See* Docket No. 82-2 at 7. CardioLife merged with LifeWatch in 1996, and Ralin was the parent company to LifeWatch. *See* Exh. A (press release announcing merger between Ralin and CardioLife). Dr.

Schwarzberg's declaration submitted in this case refers to Ralin and LifeWatch collectively as LifeWatch, stating that he "became Chief Medical Officer of LifeWatch in about 1996 and held that position until the end of 2008." Docket 82-2 at ¶ 3. Therefore, there is a privity of interest between LifeWatch, Ralin, and CardioLife.

Defendants also incorrectly argue that "[a]ny information obtained by Dr. Schwarzberg in connection with the prosecution of the Patent application pre-dated his employment by LifeWatch and, accordingly, falls outside the scope of the parties' agreement regarding confidentiality." Opp at 10. Dr. Schwarzberg signed an agreement with LifeWatch on March 27, 2000 in which he agreed with LifeWatch to keep confidential any "Ralin Confidential Information," the company to which the '143 Patent was originally assigned. *See* Exh. B at section IX; *see also* Docket No. 88-1. Thus, Dr. Schwarzberg's confidentiality obligations to LifeWatch encompass the confidential information learned during his employment at LifeWatch, Ralin, and CardioLife, including his work related to the development of the patented technology. *See Eastman Kodak*, 2003 WL 23101783, at * 1 ("There is no question … that the first element [of the disqualification test] has been satisfied here. [The expert] previously worked at [plaintiff] for eighteen (18) years during which time he unquestionably had access to confidential proprietary information belonging to [plaintiff].").

Defendants also attempt to argue that Dr. Schwarzberg did not become a LifeWatch employee until after the '143 Patent issued (which issued on March 24, 1998). Opp. at 10. However, Dr. Schwarzberg stated under oath in his declaration that he was employed by LifeWatch from 1996 to 2008. *See* Docket No. 82-2 at ¶ 3. In any event, the March 27, 2000 agreement makes clear that he agreed *with LifeWatch* to keep confidential any "Ralin Confidential Information," as noted above. *See* Exh. B at section IX.

Finally, LifeWatch, its predecessors, and Dr. Schwarzberg shared a confidential relationship because Dr. Schwarzberg participated in privileged communications during the patent prosecution process of the '143 Patent. Defendants wrongly contend that LifeWatch cannot assert the attorney-client privilege relating to the prosecution of the '143 Patent. Opp. at 11-12. Defendants rely solely on cases involving asset transfers. *Id.* Where, as here, a plaintiff "not only acquired certain assets [of a company] but also continued to operate the particular enterprise it purchased, the court found that control of the enterprise, and with it the right to assert the attorney-client privilege, passed to the plaintiff." *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1002-03 (N.D. Ill. 2008), quoting, *inter alia, Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 406 (N.D. Ill. 2007); *see also* Exh. C, Foley Decl. at ¶ 6-8. Furthermore, regardless of whether or not LifeWatch holds the attorney-client privilege, LifeWatch has the right to protect Dr. Schwarzberg and Ralin's confidential relationship revolving around the '143 Patent. *See Broadcom*, No. 09-01058, slip. op. at 3; *see also id.* at 3 n.1 ("A patent would be worth far less if upon sale all protections for confidential information associated with the patent evaporated.").

  **2.**  ***Prong #2: LifeWatch and Its Predecessors Disclosed Confidential Information to Dr. Schwarzberg that is Relevant to the Current Lawsuit.***

LifeWatch also satisfied the second prong of the disqualification test: it is clear that Dr. Schwarzberg received confidential information from LifeWatch and its predecessors relevant to the current lawsuit. Not only is Dr. Schwarzberg the sole named inventor on the '143 Patent, who was involved in the patent prosecution process, but he also worked on the technology at issue (Docket No. 82-2, Schwarzberg Decl. ¶ 2-3), and was an employee of LifeWatch up until two years ago (2008). In each of these contexts, LifeWatch and its predecessors disclosed to Dr. Schwartzberg confidential information directly relevant to the present litigation.

Courts have found a disclosure of confidential information sufficient to merit disqualification on fewer facts than these. For example, in *3D Systems*, the court disqualified a named inventor of several of the patents at issue even though the inventor had left the adversary's employ more than a decade prior to the litigation. 2008 WL 4449595, at *1, *3. And in *Eastman Kodak*, the court disqualified an expert because he was a former employee of the plaintiff and had worked on the technology at issue, even though the expert was not a named inventor and had not worked for the plaintiff for well over a decade prior to the litigation. 2003 WL 23101783, at *2, *5.

Indeed, Dr. Schwarzberg's employment at LifeWatch alone is a sufficient basis for disqualification. For example, in *Sensormatic* the court disqualified an inventor from serving as an expert for the defendant, finding that a confidential relationship existed because the inventor was a former employee of the plaintiff and had signed an employment agreement and confidentiality agreements with the plaintiff. 2006 WL 5111116, at *3*; see also Broadcom*, No. 09-01058, slip. op. at 7 ("[I]f experts are permitted to breach confidentiality agreements, they might be motivated 'to sell their opinions to the opposing parties or the highest bidder without concern about the potential confidentiality of their previous consultations.'" (citations omitted)).

Defendants admit that the confidentiality agreement protects "information that [Dr. Schwarzberg] obtained while an employee of LifeWatch." Opp. at 10. The confidential information received by Dr. Schwartzberg is directly relevant to the current lawsuit, which involves at least "cardiac monitoring and recording devices." *See* Docket No. 82-2, Schwarzberg Decl. at ¶ 2-3. Defendants do not dispute that Dr. Schwarzberg received confidential information from LifeWatch and its predecessors. Therefore, the second prong of the disqualification test is satisfied.

**B.     LifeWatch Need Not Demonstrate Any Breach of Confidentiality or Attorney-Client Privilege.**

Throughout Defendants' opposition, they argue that Dr. Schwarzberg's declaration does not contain any confidential information, as if to make it dispositive of the issue. Regardless as to whether the declaration contains confidential information, it is irrelevant to the disqualification analysis − whether there was a breach of confidentiality plays no part in the two-step inquiry. Defendants, apparently, seek to add a third prong to the two-prong test. However, the fact that an inventor knows confidential information that is relevant to the current litigation is all that is required to merit disqualification. *See, e.g., 3D Systems*, 2008 WL 4449595 at *3 ("In the end, it is enough that Dr. Jacobs worked for ten (10) years at 3D and agreed to keep confidential what he learned there, as well as being a named inventor on a number of the patents asserted, to say that he ought not be allowed to offer expert testimony in this case.").

Although Defendants argue they "are well aware of their ethical obligations and have been scrupulously careful in dealing with Dr. Schwarzberg," Opp. at 2, this is, again, irrelevant. Dr. Schwarzberg was privy to and learned confidential information at LifeWatch and its predecessors that is relevant to the patented technology at issue in this case. Any further contact by Defendants with Dr. Schwarzberg only opens the door to, at a minimum, inadvertent disclosure of confidential and/or privileged information. *See, e.g., Broadcom*, p. 5-6, *citing Sensormatic*, 2006 WL 5111116, at *4 ("Should [the expert] continue in his employment [as a consultant] in this case, he will be acting under, at the very least, a potential conflict of interest. [He] will be forced to choose between complying with his agreements with [the patentee plaintiff] (to maintain confidentiality and to cooperate) and fully advising the party who seeks to use his services in this case (a competitor of his former employer)."). Disqualification is the proper remedy where there is a risk of disclosure of confidential and/or privileged information.

### C. Dr. Schwarzberg's Proffered Declaration and Retention as an Expert By Defendants is in Direct Violation of the Assignment Agreement.

Defendants do not dispute that Dr. Schwarzberg is bound by the assignment agreement. Instead, Defendants argue that "[t]here is simply nothing improper about Dr. Schwarzberg providing evidence regarding the background of his invention and the meaning of certain disputed claim terms as understood by a person of ordinary skill in the art." Opp. at 7. First and foremost, Defendants' statement mischaracterizes Dr. Schwarzberg's declaration. Dr. Schwarzberg declaration contains *his* understanding of the disputed claim term at issue – "*it is my opinion*" – rather than the generally accepted meaning of that term to those of persons of ordinary skill in the art. Docket No. 82-2, Schwarzberg Decl., ¶ 11 (emphasis added).

Additionally, as acknowledged by Defendants, the assignment agreement obligates Dr. Schwarzberg to "generally do everything possible which [LifeWatch] … shall consider desirable for aiding in securing, maintaining and enforcing proper patent protection for said inventions." Docket No. 88-1, Exh. A. However, Dr. Schwarzberg has done quite the opposite from what LifeWatch considers desirable for securing, maintaining and enforcing the proper patent protection for the '143 Patent. Dr. Schwarzberg refused to consult with LifeWatch regarding this litigation. Instead, he entered into a $750 per hour consulting agreement to assist Defendants – parties directly opposed to LifeWatch in this patent litigation. Further, as Defendants admit, Dr. Schwarzberg now advocates a "narrower claim construction" than LifeWatch, Opp. at 8, and by doing so, improperly attempts to import preferred embodiments from the specification and limitations from dependent claims into the asserted claims. Dr. Schwarzberg's retention by Defendants as an "expert" and proffered declaration are in direct conflict with LifeWatch's interests, and thus in violation of his obligations to LifeWatch under the assignment agreement.

While Defendants argue that the assignment agreement should be "given a narrow reading," Defendants only point to two cases, both decided decades ago in circumstances factually far afield from the instant dispute. Opp. at 7. In *Blake*, a court found a provision of a car insurance policy providing that coverage is unavailable for an accident if the policyholder acknowledges liability for that accident enforceable to bar a policyholder from admitting legal liability but not to bar a policyholder from stating actual facts. *Blake v. Continental Cas. Co.*, 278 Ill. App. 232, 236 (Ill. Ct. App. 1934). Here, the assignment agreement does not suppress actual facts; LifeWatch acknowledges that Dr. Schwarzberg may be deposed as a fact witness. Mot. at 10. In *Williamson*, the court deemed unenforceable an agreement by which "in return for [one co-defendant's] promise to pay consideration, [another co-defendant] has agreed to suppress highly relevant evidence which, if revealed at trial, would be harmful to [the first co-defendant]." *Williamson v. Superior Court of Los Angeles*, 21 Cal. 3d 829, 837 (Cal. 1978). Unlike in *Williamson*, the assignment was not specifically designed to suppress highly relevant evidence. *See OXY Resources California LLC v. Superior Court*, 115 Cal. App. 4th 874 (Cal. App. 1st Dist. 2004) (distinguishing from *Williamson*, noting that "[*Williamson* and other cases] turn on the <u>narrow public policy ground</u> that a bargain to suppress nonprivileged testimony or documents is disfavored for obvious reasons." (emphasis added)).

### D. Dr. Schwarzberg's Paid Testimony on Claim Construction is Irrelevant.

Dr. Schwarzberg's declaration contains "his opinion" on claim construction and is irrelevant to the pending summary judgment motion. In arguing that his testimony is "relevant" to claim construction, Defendants ignore their own cited case law, which holds to the contrary:

> [Defendant] argues that inventor testimony is relevant in cases where the inventor does not seek to enlarge the scope of the claims to cover an accused product, but rather admits that the claims are limited to exclude that product. Under such circumstances, according to [Defendant], the testimony is reliable because it is

-10-

against the inventor's interest. ***We reject this distinction.*** Whether an inventor's testimony is consistent with a broader or narrower claim scope, that testimony is still limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application. As we have explained, 'it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO.' *Id.* Moreover, [Defendant's] asserted approach, to rely on inventor testimony when it is contrary to interest, is unworkable. It would require a case by case determination as to whether an inventor is testifying against his or her interest. The inventor might testify to a broad claim scope in order to increase the likelihood of a finding of infringement. The inventor also might testify to a narrower claim scope to avoid a challenge to the validity of the patent. ***We hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction.***

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008) (emphasis added), *citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (en banc*), aff'd*, 517 U.S. 370 (1996). Defendants submit Dr. Schwarzberg's declaration to proffer Dr. Schwarzberg's subjective "meaning of a key claim term," Opp. at 5, that ignores the common understanding of the term to one skilled in the art.

Dr. Schwarzberg's declaration states "it is <u>*my opinion*</u> that 'long term storage' in claim 18 of the '143 Patent refers to the capability of extended memory reflecting longer recordings of continuous ECG data, i.e. storing 12 hours or more of ECG data of the patient." Docket No. 82-2, Schwarzberg Decl. at ¶ 11 (emphasis added). However, the Federal Circuit has held "that inventor testimony as to the inventor's subjective intent is *irrelevant* to the issue of claim construction." *Howmedica*, 540 F.3d at 1346-47 (emphasis added). This is in sharp contrast to, for example, if Dr. Schwarzberg had offered testimony (like Dr. Sacerdoti) regarding "the established meaning of particular terms in the relevant art," *Id.* at 1346 n.5, which he did not.

Defendants do not cite to a *single* case where an inventor was allowed to testify after being challenged for disqualification. Instead, Defendants cite to cases that merely involve

-11-

striking expert testimony. Defendants' cases are further distinguishable. *Voice Technologies Group, Inc. v. VMC Systems, Inc.* is distinguishable because in that case, *the patent holder* submitted the inventor's declaration, unlike here, where the *accused infringers* (Defendants) submitted the inventor's declaration, and therefore, disqualification was not an issue. *See* 164 F.3d 605, 615 (Fed. Cir. 1999). Furthermore, here Dr. Schwarzberg's proffered testimony relates to his subjective understanding of a disputed claim term, unlike the testimony proffered in *Voice Technologies*,[2] and therefore is irrelevant. *Competitive Technologies v. Fujitsu Ltd.* is distinguishable because the motion to strike in that case was based on Fed. R. Civ. P. 37(c)(1), which is irrelevant for the present motion. *See* 286 F.Supp.2d 1161 (N.D. Cal. 2003). Further, *The Braun Corp. v. Maxon Lift Corp.* is distinguishable because not only was the basis for the motion to strike irrelevant, like in *Competitive Technologies*, but also the inventor's proffered testimony related to the accused product, not to the inventor's subjective understanding of a disputed claim term. *See* 282 F.Supp.2d 931 (N.D. Ind. 2003).

      E.     **The Schwarzberg Declaration is Proffered by Defendants to Impermissibly Narrow the Claims.**

Dr. Schwarzberg's proffered declaration sets forth an impermissibly narrow construction of the term "long term storage." When construing claim language, courts apply the "claim differentiation" doctrine. The doctrine embodies the common sense notion that the language of

---

[2]     *See, e.g., Bancorp v. Hartford*, 2002 U.S. Dist. LEXIS 27200 at *27 (E.D. Mo. 2002) (distinguishing *Voice Technologies*, stating that "[b]ecause [the inventor's] testimony concerns 'what the patentee subjectively intended the claims to mean' instead of what those skilled in the art would understand the claims to mean, the Court will disregard it."); *see also Fujinon Corp. v. Motorola, Inc.*, 2009 U.S. Dist. LEXIS 83088 (D. Del. 2009) (distinguishing *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008), cited by Defendants, because the case "states <u>only</u> that '[t]he testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding established meaning of particular terms in the relevant art.' Howmedica <u>does not</u> say that also pertinent is an inventor's factual testimony as to how the inventor intended a particular term to be understood.").

one claim should not be interpreted as to make another claim, such as a claim dependent on the first claim, identical in scope. *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005). Courts presume that all words in a claim have meaning and that the claim should not be so interpreted so as to render other words and phrases in the claim superfluous. *See, e.g., Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("claims are interpreted with an eye toward giving effect to all terms in the claim."); *see also Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("the terms 'engaging' and 'sealing' are both expressly recited in the claim and therefore 'engaging' cannot mean the same thing as 'sealing'; if it did, one of the terms would be superfluous.")

Dr. Schwarzberg's declaration offers his subjective opinion that "'long term storage' in claim 18 of the '143 Patent refers to the capability of extended memory reflecting longer recordings of continuous ECG data, i.e. storing 12 hours or more of ECG data of the patient." Docket No. 82-2, Schwarzberg Decl., ¶ 11. However, this proposed definition renders the phrase "said long term storage having a storage capacity greater than that of said evaluation buffer" in claim 18 superfluous. '143 Patent, col. 6, ll. 58-60. Specifically, Dr. Schwarzberg's proposed definition reads a storage capacity into the phrase "long term storage" of "storing 12 hours or more of ECG data of the patient." However, claim 18 specifically defines the storage capacity of the long term storage as being "greater than that of said evaluation buffer."

The inappropriateness of Dr. Schwarzberg's proffered definition is further confirmed when considering dependent claim 21, which depends directly from independent claim 18. Dependent claim 21 states "the storage capacity of the long term storage means is between about 12 hours and about 24 hours." '143 Patent, col. 7, ll. 3-5. Dependent claim 21 specifies a preferred embodiment (*e.g.*, that the storage capacity of the long term storage is between about

12-24 hours). Dr. Schwarzberg's proposed definition of "long term storage" seeks to limit independent claim 18 to the preferred embodiment in dependent claim 21. Under the doctrine of claim differentiation, there is a presumption that a dependent claim is narrower than its independent claim. Defendants are improperly trying to narrow independent claim 18 by importing limitations from dependent claim 21.

### F. Whether Dr. Schwarzberg's Proffered Testimony Was By Declaration or By Deposition Testimony Is Form Over Substance.

Defendants argue that "[i]f the same evidence that LifeWatch asks the Court to strike could be admitted if offered by way of deposition, then LifeWatch's motion serves no purposes other than preventing the Court from considering relevant evidence." Opp. at 7-8. Once again, Defendants ignore the inappropriateness of Dr. Schwarzberg's proffered testimony.

As outlined above, the law is clear that testimony as to the inventor's subjective intent on the meaning of a claim term is *irrelevant* to claim construction. Dr. Schwarzberg's testimony is not offered by way of background, nor is it offered regarding the established meaning of "long term storage" as viewed by persons of ordinary skill in the art. Therefore, Dr. Schwarzberg's testimony as to the subjective meaning of the claim term "long term storage" is irrelevant, whether such testimony is offered by declaration or deposition testimony.

## II. DEFENDANTS FAIL TO ADDRESS THE APPLICABILITY OF *WANG LABS* AND FAIL TO CITE ANY CASES ON THE ISSUE OF A PROTECTIVE ORDER

While Defendants attempt to characterize LifeWatch's requested relief for a protective order as a "gag order," Defendants' opposition fails to discuss the *key* protective order case cited in LifeWatch's motion -- *Wang Labs., Inc. v. CFR Assoc., Inc.*, 125 F.R.D. 10, 13-14 (D. Mass. 1989). In *Wang Labs*, the court disqualified the inventor from serving as defendant's expert with respect to the patent-in-suit, and also issued a protective order barring the defendant from

consulting with the inventor about any confidential information relating to the business, research or trade secrets learned by the inventor during his employment at his prior employer. *Id.* at 13. Defendants' opposition fails to cite to a single case involving the denial of a protective order.

### III. DEFEDANTS MISCHARACTERIZE LIFEWATCH'S ARGUMENTS WITH RESPECT TO STRIKING THE SCHWARZBERG DECLARATION

Defendants are wrong when they state "LifeWatch contends that the Schwarzberg Declaration should be stricken because LifeWatch is concerned that Dr. Schwarzberg has disclosed confidential information." Opp. at 5. LifeWatch did not make any argument in its motion that Dr. Schwarzberg's declaration should be stricken as a sanction for disclosure of confidential information. Rather, a confidential relationship and the possession of confidential information triggers the disqualification analysis described above. It is immaterial whether or not LifeWatch points to an actual disclosure of confidential or privileged information. The fact that Dr. Schwarzberg was privy to confidential information of LifeWatch and its predecessors that is relevant to this litigation is sufficient to justify disqualification. And, because Dr. Schwarzberg's declaration is offered in his capacity as a paid "expert witness," if he is disqualified as an expert, then his declaration should also be stricken.

### CONCLUSION

Defendants do not – and cannot – dispute that Dr. Schwarzberg acquired, during confidential relationships with LifeWatch and its predecessors, confidential information directly related to this litigation. As a result, under the two-prong disqualification test, Dr. Schwarzberg should be disqualified from serving as an expert for Defendants. In addition, Defendants should be precluded from privately consulting with Dr. Schwarzberg about the patented technology, and his declaration should be stricken.

Dated: September 21, 2010                    Respectfully submitted,

                                                      */s/ Jeremy P. Oczek*

Steven M. Bauer (admitted *pro hac vice*)
Jeremy P. Oczek (admitted *pro hac vice*)
Benjamin M. Stern (admitted *pro hac vice*)
Melissa A. Siegelman (admitted *pro hac vice*)
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110
Telephone:   (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com
bstern@proskauer.com
msiegelman@proskauer.com

and

Steven R. Gilford (IL Bar No. 3121730)
Catherine J. Spector (IL Bar No. 6287459)
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone:   (312) 962-3550
Facsimile:   (312) 962-3551
sgilford@proskauer.com
cspector@proskauer.com

*ATTORNEYS FOR PLAINTIFF
LIFEWATCH SERVICES INC.*

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system on this 21st day of September, 2010.

                                                      */s/ Jeremy P. Oczek*
                                                      Jeremy P. Oczek